Good morning may it please the court Alan Graff for appellant Jenny Swales. I'd like to reserve about two minutes for rebuttal. Treating physician Dr. Jeffrey Solomon provided two fibromyalgia diagnoses. In the second one he found Swales impairment met both the 1990 and 2010 ACR criteria based upon his thorough examinations and review of the voluminous medical record that 43485. His diagnosis also met the revised 2016 criteria Dr. Wolf under 20 CFR 4041521 acceptable clinical and laboratory diagnostic techniques. This regulation allows for medically evolving diagnostic techniques as a basis for diagnosing diseases such as fibromyalgia. The exclusion of fibromyalgia as an MDI by the ALJ is harmful. An inclusion would have changed the analysis and residual functional capacity RFC to add mental limitations that accounted for memory loss, poor balance, dizziness, lack of coordination, vertigo, all symptoms that Swales suffered from 283, 471, 484, 637, 657, 662. The present RFC is only a physical one eliminating fibromyalgia was harmful. Consistent with the regulation 20 CFR 416 945 A2 and as stated in his own decision the ALJ only considered the MDIs in formulating the RFC ALJ decision at A61. Swales fibromyalgia produced specific symptoms and not just pain. ALJ did not point to which of those symptoms were attributable to fibromyalgia and which were not. This is contrary to the unpublished decision in Sayers v. Saul, 9th Circuit, March 2020. Mr. Graf, can I ask you a question? It looks to me like the ALJ applying a standard that would require all conditions to be in order to find that fibromyalgia was a medically determinable impairment. What standard is supposed to be applied there if that indeed was an incorrect standard? Well, if you're going by SSR 12.2 P, it says there has to be evidence that other impairments that could cause the same signs and symptoms that the claimant suffered from were excluded. So, again, if we're just going by 12.2 P, what ALJ did basically was he took that, he expanded upon that and looked at you have to exclude all diseases that cause pain. That's not what SSR 12.2 P says and so that was an expansive reading and though if you had a requirement like that, you'd have to have a list of 140 or 150 different diseases that cause pain. And so the ALJ erred in that regard by associating by saying the degenerative disc disease is the same as fibromyalgia. In Revelle's bead burial, this is a landmark 9th Circuit fibromyalgia case, the ALJ found in the court affirmed that Revelle suffered from the degenerative disc disease, which the ALJ found is excluded fibromyalgia is osteoarthritis. It's a type of arthritis. So the ALJ found that fibromyalgia was not an MDI because the claimant's reported symptoms of pain was sufficiently excluded, including claimant's degenerative disc disease. So that's just symptoms of pain. He didn't look at any of the mental disorders such as the memory, loss of memory, loss of balance, coordination, all those things. And all the providing doctors of record disagreed with the ALJ's diagnosis. If the doctors believed that degenerative disc disease could cause all of Swale's multiple symptoms, they would have just treated degenerative disc disease and not looked any further. So SSR 12.2 P also directs laboratory testing may include imaging of the laboratory tests, for example, complete blood tests, erythrocyte, sedimentation rate, anti-nucleotide antibody, thyroid function, rheumatoid factor. The record contains many of these tests. As examples, 351 to 367, they were comprehensive blood tests, urine tests, stool tests, 424, CT scan of the neck and brain, 417, 435, more labs, 463 RNA blood tests. It goes on and on. There was multiple tests performed that were nurse Roberson sent the claimant out over three-year time. And it's ironic that through his own analysis of the medical record, the ALJ excluded all of Swale's remaining MDIs as the cause of Swale's severe generalized pain. He wrote the objective findings in this case failed to provide strong support for the claimant's allegations of disabling symptoms and limitations, A62. And supported that he cited normal motor strength, normal movement in extremities, stable balance, gait, all of those findings and reveals his court found aren't apical to fibromyalgia. Those who suffer from fibromyalgia have normal muscle strength, sensory functions, or inflections that are normal. So the ALJ used normal findings associated with fibromyalgia to discredit the level and type of pains Swale's was experiencing from the MDIs of arthritis and obesity, which he found by their combined existence excluded the diagnosis of fibromyalgia. This is circular reasoning and was thus internally floored. I wanted to address the commission that cites three different cases, two of them unpublished, Todd and Downs. And those, the court quotes SSR 12.2p and says exclusion should be of diseases that cause the same signs and symptoms as the claimant. I don't have any problem with that. I agree that that's the proper definition reading of 12.2p. But in Ford footnote seven, the court cites 12.2p, excuse me, 12.2p, but then says the claimant's pain, the criteria required physician to rule out other causes of claimant's pain. Well, that's what SSR 12.2p doesn't say that. And so if the court is citing 12.2p, you have to then interpret the term claimant's pain as meaning signs and symptoms of the claimant. The other thing I just wanted to mention that if you look at Ford, the footnote seven is actually not consequential to the resolution of the case. Ford was centered around a listing issue, a vocational issue, and a subpoena. There's no argument presented by Ford that the omission of fibromyalgia as an MDI affected the RFC. So this is sort of an afterthought by the court that they put in footnote seven, and I argue doesn't really have precedent. I'm going to, I'm just about at two minutes, so I'll let the commissioner make the argument. Okay, if you want to say the remainder of your time, that's fine. We'll hear from the commissioner. Lars Nelson on behalf of the commissioner. The court should affirm the decision of the ALJ. Your Honors, I'm happy to answer any questions the court may have on SSR 12.2. The court doesn't need to reach that issue because it's not really what the case is about. The ALJ specifically noted in assessing the claimant's residual, widespread fatigue, found that these allegations were stopped working more than two years before her alleged onset dates when her daughter was born. Her after, right after she applied in 2014, her activities of daily living included caring for two toddlers, and she said she handled all daily routines for them, even though that was difficult, and that's at 250. Then she not only just cared for children, but then she doubled down still further by homeschooling the children. The court in Rollins... Just a moment. Did we lose Judge Watford? Judge Paez, I don't see him. Yeah, I don't think... I don't see him either. Bobby? I'll go ahead and pause audio here. Counselor, he was having internet problems yesterday, too. Right, we'll wait for his call. Okay. There he is. Again, this court does not need to... Okay, let's back up to Kathy. Are you there? Yes, I am. Could you restore 20 seconds or so for counsel? 30 seconds. Public audio is enabled now. Public audio is enabled now. ...not need to reach the SSR 12-2P because, again, stopped looking for work when her daughter... Time of her application, she said... ...all the daily needs of two toddlers, and that... ...thought was hard that she was... So... So, counsel, can I take your... You started out by saying that when the ALJ framed the residual functional capacity determination that he took into account for signs and symptoms of fibromyalgia. Is that... Is that your... Yes, that's correct, Your Honor. But he actually didn't incorporate any pain or fatigue in the actual definition that he gave for residual functional capacity. Isn't that right? Yes, I'm unfamiliar... He said that in framing the... I guess what your argument is is that in his discussion leading up to his determination justifying his definition of the residual functional capacity, he considered, he thought about her fatigue. Is that how it happened to you? Because it's not... There's nothing about fatigue in her RSC. And nor should there ever be, Your Honor, because fatigue is an indescribable complaint. You know, parents and athletes experience fatigue. Limitations that stem from fatigue. Second paragraph down of 23 of the ALJ's decision, ALJ notes that her allegations of generalized... ALJ was assessing her subjective complaints. The ALJ was specifically... Allegations of generalized pain... And again, this is someone who stopped looking for work when their daughter was born, cared for two toddlers, and then doubled down by adding homeschooling to regular care of parenting. And this Court Collins and this Court Brighton have held that homeschooling and caring for children undermines claims arising from fibromyalgia. And in addition, in the Revell's decision, there was no allegations by the claimant of lifting problems. The final sentence of Section 1 of SSR 12-2P says that we review the medical records to see how they account for the claimant's strength and functional limitations. So when the ALJ was talking about strength findings, they are relevant to fibromyalgia. Right. So could you go back and take me through how the ALJ determined that fibromyalgia was not medically determinable? Or is not a severe impairment? Sure. That is the ALJ Step 2 finding. And I'm looking at the second paragraph on page 21. The ALJ extensively discusses requirements of SSR 12-2P. Act quotes towards the end, the other disorders in the... Quoting the 1990 and the 2010 versions, quotes other disorders that could cause these repeated manifestations of symptom signs or co-occurring conditions. ALJ was not holding the claimant to a requirement that all impairments must be. ALJ specifically quoted this requirements of SSR 12-2P. And I would like to note that SSR 12-2P is not the only medical condition require a rule out analysis. SSR 19-4P for headaches, SSR 15-1P for painful bladder syndrome, SSR 14-1P for chronic fatigue syndrome, all require rule out analyses. And then here the ALJ cited Dr. Solomon's report and then went on to explain, but the report does not contain evidence that other impairments were excluded. So the ALJ was not requiring an exhaustive, every impairment that the doctor needed to rule out. He was just providing one example that was... Or it looks to Dr. Solomon's September 2016 report at 481, and particularly at 485 when he discusses his diagnosis, you will see that Dr. Solomon says, it's unclear if she has other inflammatory or autoimmune disorders. And that's at 485 when he's discussing the diagnosis. Now, if this court looks to footnote seven in SSR 12-2P, amongst the rule out impairments, rheumatologic disorders and polymalagia rheumatica, which is an inflammatory disease disorder. So within Dr. Solomon's own report, he notes that there were other possible impairments that were unclear. And under SSR 12-2P, which is really just effectuating the statute, 42 USC 423 D1A, that there must be a medically determinable impairment. And that's why we have a rule... So on page 485 of the... I guess it's the excerpts of record. Where you were just quoting from? Yes. Where in Dr. Solomon's report under assessment, I think it's paragraph two, which is what you were referring to. Your concern is with his language unclear if she has other inflammatory or autoimmune disorder. Yes, because if you go back earlier in his assessment, he's discussing Dr. Chamberlain's, the rheumatologist, June, 2016 report. It was at 495 and 96. And so he acknowledges that Dr. Chamberlain, the rheumatologist, unclear about whether there were other issues at play in this case. Notably, in Revels, this court said that rheumatologists are entitled to special deference in fibromyalgia. Well, Dr. Solomon, the rest of that paragraph too is very definitive in that she clearly meets diagnostic criteria for fibromyalgia, both the older and more stringent criteria as well as the newer watered down criteria. This includes widespread tender points at upper and lower limbs and trunk. She was tender everywhere. Emotional disturbance, fatigue and gastronomical... gastrointestinal disturbance. Yes, so his report satisfied the first two parts. It's not a medically severe impairment because there's no rule out. Exactly, Your Honor. Okay. But again, this court doesn't need to reach that issue because the LJ fully considered allegations of widespread pain and fatigue. And the commissioner's argument as to SSR 12-2P is fully in accord. It is fully in consistence with Revels, which at 660, Revels was discussing the claimant's subjective complaints there, noted that the diagnosis of fibromyalgia was one of exclusion. That is because it's a particularly challenging impairment to diagnose. So for all the reasons stated, I believe that this court can affirm the commission without reaching the issue. Okay, we'll hear from the appellant's counsel, Your Honor. Thank you, Your Honor. Okay. Fibromyalgia of swells, we're hearing a little bit of echo here, caused blurry vision, vertigo, low-grade fevers, poor coordination, memory loss, imbalance. One of those symptoms was dealt with by the ALJ. Degenerative disc disease doesn't cause those symptoms. So it was a faulty diagnosis. As far as the activity that the commissioner's counsel mentioned that supposedly discredit the claimant in terms of her complaints, the ALJ just wrote, her activities are inconsistent with her claims. And all of the other things, all the other activities that counsel mentioned were not mentioned by the ALJ. So this is sort of a chain of re-violation. You have to take the ALJ's decision as you read it and not add or supplement to it. And finally, 12-2P is the way it's written. And it's based in the course of my briefing. I actually read the 1990 and the 2010 criteria from beginning to end. And the 1990 criteria never mentions exclusion. The 2010 criteria does bring an exclusion and then tries to backstrap the 1990 criteria. But then in the 2016, and these are all medical authority and medicine changes. We've seen that even in the pandemic where masks didn't prevent disease and then they do prevent disease, science changes. But the scientists said in the 2016 revision, in this revision of the 2010 criteria, we specifically endorse and accept the original 1990 recommendation that fibromyalgia remains a valid construct irrespective of other diagnosis. That's the current medical authority and you shouldn't be going backwards and exclude people from claiming disability based upon a valid diagnosis of fibromyalgia. Okay. Thank you. Thank you. Thank you, counsel. We appreciate your arguments this morning, Ms. Bader. And the case is submitted at this time for decision. Thank you.
judges: Paez, Watford, Tunheim